**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA
 Plaintiff,

v.

ANGEL LUIS VALLE DELGADO
Defendant,

CRIM. NO. 25-00448 (FAB)

**SENTENCING MEMORANDUM**

**TO THE HONORABLE COURT:**

 COMES NOW the Defendant Angel L. Valle Delgado through the undersigned defense counsel and hereby very respectfully STATES and PRAYS as follows:

**I. RELEVANT FACTS AND PROCEEDINGS:**

1.    That on October 30, 2025, a District of Puerto Rico Grand Jury rendered a three count Indictment charging the defendant with violations of Title 18 U.S.C. § 21:841(a)(1) and (b)(1)(B)(ii) Possession with intent to distribute cocaine, 18:1703(a) Delay or destruction of mail and 18:1709 Theft of mail matter by officer or employee.

2.    On February 3, 2026, the defendant pleaded guilty to Count One and Count Three of the Indictment pursuant to a plea agreement.

3.    That on March 30, 2026, the presentence investigation report (hereinafter PSR) was disclosed. This report was subject of extensive study and later same was duly translated, word-

by-word, from the English to Spanish language, and its entire content as well as the possible legal outcome and consequences of such PSR were fully disclosed to the defendant.

4.    That the defendant understands that the following concerns and set of facts should be considered pursuant to 18 U.S.C. § 3553(a) before sentence is herein imposed and with this motion intends to shed more light into this matter.

5.    Accordingly, it is hereby hence very respectfully requested by this Honorable Court to be indulgent in this case and to consider the following sentencing objections, factors and proposals in mitigation of punishment pursuant to Rule 32 of the Federal Rules of Criminal Proceedings and Local Rule 132.

II. FACTORS TO BE CONSIDERED BEFORE SENTENCE IS HEREIN IMPOSED PURSUANT TO 18 U.S.C. § 3553 (A):

A. INTRODUCTION AS TO APPLICABLE LAW

Sentencing Motive: "A Sentence Sufficient but Not Greater than Necessary"

On January 12th, 2005, the U.S. Supreme Court in the case of _U.S. v. Booker_, 125 S. Ct. 738 (2005)(—The Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged.‖), reiterated its previous holdings in _Appendix v. New Jersey_, 530 U.S. 466, 120 S.Ct. 2348 (2000), and _Blakely v. Washington_, 542 U.S. 961, 124 S.Ct. 2531 (2004), and found, among others, that the mandatory and binding sections of the U.S. Sentencing Guidelines infringe the Sixth Amendment and as a consequence, such sections, to wit: 18 U.S.C. §3553(b)(1) and 3742(e), were held unconstitutional and as a consequence, severed and excised.

In *Booker*, the Supreme Court additionally determined that the abrogation of Sections 3553(b)(1) and 3742(e) "makes the guidelines effectively and merely advisory, requiring a sentencing court to consider Guideline ranges, *see* § 3553(a)(4), but permitting it to tailor the sentence in light of other statutory concerns,‖ *Booker,* at 743 and 750, as long as the sentence imposed duly meets the reasonableness standard. Therefore, this Honorable Court is no longer bound to the strict application of the guidelines, which now are seen as mere recommendations for sentencing. However, before the district court could now impose punishment, it must weigh and consider all relevant mitigating factors under 18 U.S.C. § 3353.

Moreover, the defendant concedes that even after U.S. v. Booker, any enhancement determination to be made by the sentencing court would only need to be supported by a preponderance of the evidence finding. *Sepulveda,* 15 F.3d at 1198. Although the guidelines are not per se mandatory, but rather advisory, before the sentencing court takes any action or imposes sentence, it must first consider and apply the same to the relevant facts of the particular case. *See, e.g., U.S. v Bucci*, 582 F.3d 109 (1st Cir. 2009); *U.S. v. Bunchan*, 580 F.3d 66 (1st Cir. 2009); *U.S. v. Martin*, 520 F.3d 87, 91 (1st Cir. 2008).

Likewise, sentencing courts do now have more discretion to consider a downward departure from the otherwise applicable guideline imprisonment range. *See Koon v. U.S.*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *U.S. v. Rivera*, 994 F.2d 942 (1st Cir. 1993)(Justice Breyer); *see also, U.S. v. Sally,* 116 F.3d 76 (3rd Cir. 1997)(post conviction rehabilitation). However, "a district court, in exercising its discretion to impose a below guideline sentence, must still do so in a reasoned manner.‖ *U.S. v. Bucci,* 582 F.3d at 120-121.

Under § 5K2.0 of the U.S.S.G., 18 U.S.C. § 3353 [1], and _Koon v. U.S.,_ 116 S.Ct. 2035, the sentencing court has the power to depart from the otherwise applicable guideline imprisonment range based on mitigating circumstances not adequately taken into consideration by the Sentencing Commission at the time that the guidelines were enacted. This means that a departure is permissible only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present, placing the case outside the heartland of the factors considered when the guidelines were promulgated.

**In _Koon_ the Supreme Court further held that:**

—Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline. To resolve this question, the district court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing. Whether a given factor is present to a degree not adequately considered by the Commission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guideline cases. District courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guideline cases than appellate courts do.‖

---

[1]    18 U.S.C. § 3553. Imposition of a Sentence

(A)  **Factors to be considered in imposing a sentence.-** The Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing]...(2) (A). .. just punishment for the offense; (B)... adequate deterrence...; (C)... protect the public...; and (D)... provide the defendant with needed educational or vocational training, medical care, or other correctional treatment...

(B)  **Application of guidelines in imposing a sentence.** –The Court shall impose a sentence of the kind and within the range... **unless the court finds that there exists and aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission** in formulating the guidelines that should result in a sentence different from that described. ..

Therefore, <u>*Koon,*</u> makes it clear that the departure inquiry is fact-based. "The relevant question, however, is not, as the Government says, "Whether a particular factor is within the "heartland" as a general proposition, but whether the particular factor is within the heartland given all the facts of the case." *Id.* At 2047.

Under 18 U.S.C. § 3661, entitled <u>*Use of Information for Sentencing,*</u> "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." This means that there are a "potentially infinite number of factors which may warrant a departure." <u>*See U.S. v. Coleman,*</u> 188 F.3d 354, 358 (6th Cir. 1999).

Likewise, "an offender characteristic or other circumstances that is, in the Commission's view, "not ordinarily relevant" in determining whether a sentence should be outside the applicable guideline range may be relevant to this determination if such characteristics or circumstance is present to an unusual degree and distinguishes the case from the "heartland" cases covered by the guidelines." U.S.S.G. § 5K2.0. " This [l]ast paragraph of this policy statement sets forth the conditions under which an offender characteristic or other circumstance that is not ordinarily relevant to a departure from the applicable guideline range may be relevant to this determination. The Commission does not foreclose the possibility of an extraordinary case that, because of a combination of such characteristics or circumstances, differs significantly from the "heartland" cases covered by the guideline in a way that is important to the statutory purpose of sentencing, even though none of the characteristics or circumstances individually distinguishes the case." U.S.S.G. § 5K2.0, <u>*Commentary,*</u> paragraph number two.

Pursuant to § 5K2.0, the First Circuit of Appeals has determined that a downward departure from the otherwise applicable guideline range is authorized based on a combination of factors, none of which standing alone would have justified such departure. *See, eg., U.S. v. Sklar,* 920 F.2d 107, 117 (1st Cir. 1990); U.S. v. Jones, 158 F.3d 492 (10th Cir. 1998)(Holding that the extent of the departure was reasonable in allowing a sentence of probation, because of the court's concern with maintaining the ongoing rehabilitative relationship defendant had through his employment at a public health facility); *Bourjaily v. U.S.,* 483 U.S. 171, 179-80, 97 L. Ed. 2d 144, 107 S. Ct. 2775 (1987) (―Individual pieces of evidence, insufficient in themselves to prove a point, may in accumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts.‖); *U.S. v. Ribot,* No.98-10061, 97 F. Supp. 2d 74 (D.Mass. 1999)(Departs down to probation from range of 24-36 months based on a combination of aberrant behavior and mental illness/diminished capacity for defendant convicted of nearly $200,000); *U.S. v. Lombard,* 72 F.3d 170, 183-84 (1st Cir. 1995)(Remanded because district court failed to recognize the possibility that it could grant a downward departure for combination of factors: ―e.g., the state court acquittal [on murder charges] and the fact that the federal sentence [for subsequent prosecution on gun charges arising out of same conduct that resulted in state murder acquittal] may exceed any state sentence that would have attached to a murder conviction; the paramount seriousness of the ―enhancing conduct‖; the magnitude of the ―enhancement‖; the disproportionality between the sentence and the offense of conviction as well as between the enhancement and the base sentence; and the absence of a statutory maximum for the offense of conviction—taken in combination, make this case ―unusual‖ and remove it from the ―heartland‖ of the guideline (§2K2.1) that yielded the mandatory life sentence).

"Even if any one factor is not sufficient in itself to provide a basis for departure, any combination of the above potential reasons for departure could provide an adequate basis.‖ *U.S. v. Fairless,* 975 F.2d 664, 669 (9th Cir. 1992); *U.S. v. Broderson,* 67 F.3d 452 (2d Cir. 1995); *U.S. v. Rivera-Maldonado,* 194 F.3d 224 (1st Cir. 1999), (The defendant contended that she should have been granted a downward departure because her dependent son has AIDS and required her care. The district court correctly observed that it has the "power to depart in ‗unusual cases' and where family circumstances are out of the ‗ordinary').

Again, Booker makes clear that sentencing courts must now consider the guidelines an all of the other sentencing factors set forth in 18 U.S.C. §3553(a). Booker, 125 S. Ct. at 757,764,766,767,768. The sentence therefore must be "sufficient but not greater than necessary,‖ "to fulfill‖ (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, "18 U.S.C. § 3553(a)(2), and in making that decision, the court must consider, in addition to the guidelines range and policy statements including departures, 18 U.S.C. § 3353(a)(4), (5), "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; ... (3) the kinds of sentences available; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.‖

Before *Booker,* sentencing courts could not consider nor act based on all the mitigating factors present in the given case, such as the ones listed in § 3353(a), because § 3553(b0(2)

required and mandated a sentence within the guideline range unless specific rare standards for departure were met. *Crosby*, 397 F.3d at 108-109; *Koon v. U.S.*, 518 U.S. 81 S. Ct 2035 (1996). Prior to Booker, no district court could have anticipated the excision of section 3553 (b)(1) and therefore, no district court rightfully considered that is has the judicial power to consider all of the mitigating factors herein present as well as the sentencing factors listed in §3553(a) factors. However, now we know better. Under Booker precedent, this district court is no longer restricted to the guidelines and can impose a fair sentence under the totality of mitigating and aggravating factors under §3553. However, —but this system is not a blank check for arbitrary sentencing...Judges still must start out by calculating the proper Guidelines range-a step so critical that a calculation error will usually require re-sentencing... The reason for this is simple. Congress wants judges to do their best to sentence similar defendants similarly starting with the Guidelines framework-which gives judges an idea of the sentences imposed on equivalent offenders elsewhere helps promote uniformity and fairness. By having done this, judges can sentence inside or outside the advisory range, as long as they stay within the statutory range and consider the sentencing factors arrayed in §3553 (a)- factors that include the nature of the offense, the background of the defendant, the seriousness of the crime, the need to deter criminal conduct, and the need to protect the public from further crimes by the defendant. *" U.S. v. Rodriguez,* 2010 U.S. App. Lexis 26267 (1st Cir. Dec. 28, 2010).

Likewise, —sentencing under an advisory guideline regime is more art than science. A sentencing judge must weigh a variety of considerations, filter them through his real-world experience and his unique perspective on the case, and formulate a sentence that is responsive to the facts. There is normally no single appropriate sentence but, rather, a range of reasonable sentencing options.‖ U.S. v. Anonymous, 2010 WL 5175183.

In sum, in every case, a sentencing court must now consider all of the §3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. The defendant wholeheartedly understands that this Honorable Court should consider that there are sufficient mitigating factors in this particular case to take the instant case of the heartland and as a consequence, very respectfully moves for this Honorable Court to consider the following existing factors for the imposition of a sentence pursuant to the **terms of the plea agreement:**

**(1) Departures based on Family Ties and Responsibilities Category Pursuant to 18 USCS Appx § 5H1.6, Facts and comments under THE OFFENSE CONDUCT:**

In general, District court may depart from applicable guidelines range pursuant to § 5H1.6 once it finds that defendant's family ties and responsibilities or community ties are so unusual that they may be characterized as extraordinary. United States v Canoy (1994, CA7 Ill)  38 F3d 893.

Likewise, and as previously stated, Booker now permits sentencing courts to grant variances from the otherwise applicable guideline imprisonment range without regards to the past restraints on departures. This means that now sentencing courts can vary from the guidelines based on defendant's unusual and extraordinary family ties and responsibilities. *United States v. Rivera,* 994 F.2d 942 (1st Cir. R.I. 1993)**;** *United States v. Alba,* 933 F.2d 1117, 1122 (2d Cir.  1991); *United States v. Haversat,* 22 F.3d 790 (8th Cir. Mo. 1994).

It is imperative for the children to continue receiving financial and emotional support from the defendant. If the defendant is sentenced to more than 60 months, he will miss out on a significant amount of his two children's life. The most important development stages of a child are from infancy to pre-teen years. There have been several scientific studies conducted in children who grow up apart from their biological fathers do less well, on average, than children who grow up with both natural parents. They are less likely to finish high school and attend college, less likely to find and keep a steady job, and more likely to become teen mothers.

In *United States v. Rivera*, 994 F.2d 942 (1st Cir. R.I. 1993), Ms. Rivera transported about one pound of cocaine, from New York to Providence, with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). The Guidelines provide a sentence of 33 to 41 months imprisonment for a first time offender who has engaged in this conduct. *See* U.S.S.G. § 2D1.1(a)(3)(c)(10) (base offense level of 24); U.S.S.G. § 3B1.2(a). Ms. Rivera argued to the district court that it should depart downward from this Guidelines sentence because 1) she has three small children, ages three, five, and six, who need a mother's care; 2) she lives solely on welfare, receiving no financial aid from her former husband;3) she has virtually no contact with any other family member (except for a sister, with five children, also on welfare);4) she has never before engaged in any criminal activity;and,5) she committed this single offense because of an unwise wish to obtain money for Christmas presents for her children. The first circuit remanded the case for further proceedings and instructed the district court to be fully aware of its power to depart in "unusual cases" and where family circumstances are out of the "ordinary."

The Court also examined the case law and found several cases permitting departure in similar, or even less sympathetic, circumstances. *See United States* v. *Johnson,* 964 F.2d 124, 128-30 (2d Cir. 1992) (sole responsibility for raising four children); *United States* v. *Alba,* 933 F.2d 1117, 1122 (2d Cir. 1991) (twelve-year marriage, two children, living with disabled, dependent father and grandmother); *United States v. Pena,* 930 F.2d 1486, 1494-95 (10th Cir. 1991) (single parent of infant and sole supporter of sixteen-year-old daughter and daughter's infant); *United States* v. *Big Crow,* 898 F.2d 1326, 1331-32 (8th Cir. 1990) (solid family and community ties and "consistent efforts to lead a decent life in [the] difficult environment" of an Indian reservation). *See also United States* v. *Gaskill,* 991 F.2d 82 (3d Cir. 1993) (defendant's responsibilities for mentally ill wife might justify departure).

Furthermore, as confirmed in the PSR the defendant accepted responsibility for his involvement and expressed his repentance from day one. The defendant has no prior adult criminal convictions. Instead, what we have is an individual who all his life has been a law abiding citizen and that he takes care of and provides all basic needs for his children and wife.

We must advise this Honorable Court that no sentencing goal will be herein achieved by imposing a long imprisonment term. Instead, a long imprisonment term will only serve to waste valuable resources and funds required for other areas of major importance. We must highlight the fact that it costs the taxpayers thousands of dollars a year to maintain a defendant.

**(2)    Other Mitigating Factors:**

In this particular case, the defendant is a 43-year-old Hispanic man, who has no prior adult history of any criminal convictions or participation of any kind in any criminal activity.

Moreover, the defendant truly repents his actions and wants to become a productive member of our society, and he manifested how painful and shameful these criminal proceedings have been on him as he has lost his liberty but most importantly the ability to provide for his children and wife.

Based on this repentance presented by the defendant, it seems he represents a very low level of recidivism. This is the reason why this defendant respectfully moves this Honorable Court for an opportunity to fully integrate into our society. However, he understands and accepts that he must be punished for his wrongful conduct.

In addition, the defendant's military history reflects a consistent record of honorable service and exemplary conduct. He entered the United States Army on September 28, 2007, and served in the Reserve Component, ultimately attaining the rank of E-6 (Staff Sergeant), before receiving an Honorable Discharge from active duty.

Throughout his military career, he earned numerous decorations, including the Army Commendation Medal, the Army Achievement Medal (Second Award), and the Army Reserve Component Achievement Medal (Third Award), as well as the National Defense Service Medal. He was also recognized for his service in the Global War on Terrorism, including deployment to Iraq, where he was awarded the Iraq Campaign Medal with Campaign Star.

Also, he received multiple certificates and commendations recognizing his outstanding performance. These include a Certificate of Appreciation for his work on installation-related construction at Fort Dix, New Jersey, completion of the TC-AIMS Asset Management Course, and specialized training with U.S. Customs and Border Protection. His service further included direct support during Operation New Dawn in Iraq, as well as logistical assistance to military units, demonstrating his commitment, reliability, and strong work ethic.

Throughout his tenure, he was consistently recognized by his superiors for his outstanding performance and meaningful contributions to mission success. Taken together, this record reflects a disciplined, responsible, and service-oriented individual who has lived as a law-abiding citizen and enjoys a strong reputation within his community, as well as among his friends and family.

The defendant presents a documented history of mental and emotional health conditions that are directly consistent with the psychological impact of military service in a combat zone. Following his deployments, he began experiencing persistent symptoms including panic attacks, chronic anxiety, and manifestations consistent with post-traumatic stress disorder (PTSD). These conditions are widely recognized in clinical and legal contexts as common consequences of prolonged exposure to life-threatening environments, high operational stress, and traumatic events inherent to combat duty.

In addition to these symptoms, the defendant has also struggled with insomnia and depression, further compounding his overall mental health condition. The cumulative effect of these disorders has significantly impaired his emotional regulation, stress tolerance, and decision-making abilities. His condition was exacerbated by subsequent traumatic events after his service, including multiple motor vehicle accidents occurring within a short time frame, which further destabilized his psychological state and required medical intervention through the Veterans Affairs system.

Despite having access to treatment, the defendant has demonstrated hesitation in fully engaging with mental health services, largely due to fear of hospitalization and stigma often associated with seeking psychiatric care among veterans. Instead, he has attempted to manage his symptoms independently, which, while reflective of a desire for self-reliance, has likely limited the effectiveness of his recovery and contributed to the persistence of his condition. His reluctance to

adhere to prescribed medication regimens further underscores the complexity of his mental health challenges.

Taken together, the defendant's mental and emotional health history reflects a pattern of service-related trauma and its lasting consequences. These conditions are not indicative of disregard for the law, but rather of an individual coping with significant psychological injuries sustained in the line of duty. As such, they should be carefully considered as mitigating factors in evaluating his conduct, level of culpability, and overall circumstances before the Court.

Regarding the imposition of a potential fine, we implore the Court not to impose a fine in this case due to the financial hardship being faced by his family. As shown in the PSR, he is the principal provider of his family. In addition, it will be very difficult for the defendant to find employment upon release of his imprisonment. The defendant will bear the stigma of having a prior criminal record. Even though we might consider that he has fully rehabilitated, it is going to be very difficult for the defendant to find suitable employment, which will permit him to labor and to support his family.

Regarding the supervised release we understand that 4 years is reasonable in this case.

Today more than ever, the defendant wholeheartedly understands that he must be punished for the offenses of his conviction. However, he respectfully moves this Honorable Court to consider the mitigating factors herein raised and to secure an honest and fair proceeding, fortifying defendant's desire to provide for the health and wealth being of his children, while being subjected to the strict supervision of this Honorable Court, the U.S. Probation Office, and the U.S. Bureau of Prisons.

**III.    CONCLUSION:**

In sum, the defendant hereby very respectfully requests this Honorable Court to take notice and consider all the sentencing factors and information herein made available, imposing the lowest sentence possible based on the mitigating factors, plea agreement and information herein made available, imposing the lowest sentence possible based on the mitigating circumstances present pursuant to 18 U.S.C. § 3553 and *U.S. v. Booker*, so that the punishment is sufficient but not greater than necessary to meet the objectives of sentencing and to impose a fair and reasonable sentence of 60 months and 4 years of supervised release.

WHEREFORE, it is hereby very respectfully prayed for this Honorable Court to take notice and consider the information herein made available and to grant the relief sought, imposing the lowest sentence possible available in this particular case based on the plea agreement and the mitigating circumstances present pursuant to 18 U.S.C. § 3553 and *U.S. v. Booker*, so that the punishment imposed is sufficient but not greater than necessary to meet the objectives of sentencing and for the sentence to be reasonable and fair.

**RESPECTFULLY SUBMITTED** this April 23rd, 2026.

**I HEREBY CERTIFY** that on this same date this motion has been filed with the Clerk of the Court using the CM/ECF system, which will forward copies to all concerned.

**ILC LAW OFFICE**
CITY TOWERS, SUITE # 304
252 PONCE DE LEON AVENUE
SAN JUAN, P.R. 00918
TEL: (787) 236-0852
EMAIL: latiff.lawoffice@gmail.com

/s/ *Ibraham Latiff-Carrasquillo*
IBRAHAM LATIFF-CARRASQUILLO, ESQ.
USDC-PR NO. 303901